Good morning is United States v. Rosenow. Counselor, you may begin whenever you're ready. Thank you very much, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Timothy Scott for the appellate, Carsten Rosenow. The first issue I'd like to address today is the search and seizure issue, and specifically whether on these facts there was government action sufficient to constitute Fourth Amendment inquiry or to justify at least inquiry under the Fourth Amendment. Now, in our view, the answer to that question, whether there was government action, is the same whether we look at what the government knew and when. That is the knowledge and acquiescence prong. Whether we look at the searching companies' intentions and motivations, which is the second prong under the more rigid Ninth Circuit test. Whether we look at the statutory scheme that both permits these searches and then requires their disclosure in some instances. Mr. Scott, let me, on those two prongs, there, it appears there are factual issues to be reviewed within that, and the district court made certain findings on some factual issues there. Are we to review those for clear error? Are they mixed questions of law and fact, or what's your point? Yes, Your Honor. At most, these are mixed questions of law and fact that are appropriate for de novo review. The argument that the government makes is that the court, the district court, made findings about, quote-unquote, participation or instigation or whether there was joint investigations. Those are really legal questions that are determined by looking at all of the facts, and so we would argue that in a Fourth Amendment context, in particular, that this is de novo review. Otherwise, these kinds of issues would escape the judicial review that an appellate court should apply to facts like this. Counsel, it occurs to me that there are potentially a couple of avenues by which legitimately we could assume that there's a violation, but nonetheless affirm, and the first I want to ask you about is the good faith exception, because here there is a warrant. It's facially valid. There's nothing weird about it. The affidavit establishes probable cause, and the author of the affidavit had the belief that all the evidence that was referred to in the warrant in the affidavit for the warrant was obtained lawfully. So why isn't this a good faith situation? There's a couple of reasons, Your Honor. First, the government argues mainly on appeal that it is crawl that provides the good faith, that is that the government was relying or its to search and then disclose. The problem with that parole argument is that it was not made in the district court, and it wasn't even. It isn't even borne out in the in the warrant. And what I mean by that, let me ask you one thing. Did did did the government argue at the district court for the good faith exception, but you're saying that they just made a slightly different version of it, or did they not argue for it at all? They didn't argue. They didn't argue a parole statutory reliance. No, that's not my question. Did they argue for the good faith exception in the district court? Yeah, I'm sorry. I was trying to answer the question. They did argue Leon good faith reliance on that's what I'm asking you about. Also is Leon. Yes, exactly. There's a facially valid warrant showing probable cause, and the person who wrote the affidavit thought that all the things mentioned in it were lawful. Why isn't that Leon? Because first off, the person who swore out the warrant was essentially a straw man affidavit or affiant, meaning the district, the record of the district court shows that that person was not actually involved in the investigation. They, I hope this doesn't sound pejorative, but they more. Does that make the warrant not valid in some way? Well, certainly if we're talking about the good faith of the affiant, and the affiant in reality really doesn't know one way or the other, and is simply parroting what a different agent told them, I don't, I don't think that that's quite the same thing as, as good faith by the drafter of it's essentially somebody who is, doesn't know one way or the other, who's agnostic at best about those facts. But I think perhaps more authority for that. What's your authority for that? Well, I think that's just sort of the definition of good faith is the person really believes what they're saying. And I don't know how a person can really believe what they're saying, when they're simply passing on what Well, no, but that's what investigations are. People all work together. And one person said, well, this, I did this part, you did that part. And then one person becomes the affiant. If they didn't believe it, they do sign under penalty of perjury to the best of their belief. So if they didn't believe the officer that told them certain things, then you and, and they admitted that that would be different. But that's not what all of these, most of the, there always is some hearsay in there, they don't, one person doesn't do an investigation like this. So I'm not really, that one's not really resonating with me. Okay, well, let's, I mean, I guess you could argue first, this isn't really collective knowledge, because it's not one person did one thing, one person did another, the app, you didn't do anything, they simply sort of lip sync, what a completely different person did. But let's set that aside. I think it's telling that what the applicant told the search warrant magistrate was that the information underlying that some of these very troubling facts and chats and some of the facts that came out, they told the search warrant judge that these came from the warrants, and that these came from administrative subpoenas. Both of those things were factually false. And so I think that right there further undermines good faith, neither. I have another set of questions for you on another, another possible angle. And I'd like your take on that. And that is whether the denial of the motion to suppress was harmless. And I asked that because there was a stipulation entered into where defendants said he agreed that he had possessed child pornography found in his home. And he agreed that at least one of the images showed him sexually assaulting a minor. So I want to clarify was you worried that that stipulation was entered into? Okay. And was the evidence that was sought to be suppressed introduced at trial? That the answer to both those questions is yes. The government is referencing the Larson case, and saying that this that Larson, I want to understand your second answer. You said yes, the evidence that you sought to have suppressed was introduced at trial or was not introduced? It was, it was there. There were separate things. There were the jury was shown video, contraband child pornography video, over our objections. And despite our motion to suppress separately, we also stipulated to additional and different video. Okay, I understand that. I my apology. So why would Larson, not the logic of it applied, he didn't stipulate to every element of the crime, but why wouldn't the logic of it apply that the stipulation essentially moves the motion to suppress? Well, because first, there were things that were shown that we tried to suppress. So that was the answer to the court's last question is that there was evidence that was over our objection. Secondly, this stipulation is far, far removed from Larson. In Larson, they stipulated not only the facts, but to all of the elements of the offense. Now here, we didn't stipulate to all of the elements of the offense, or really any of the elements of the offense we stipulated to what was shown on thumb drives and videos that we had tried on where the defendant stipulated to all of the elements in a stipulated facts trial, this court still reversed to find whether there was a knowing and intelligent waiver of the right to pursue the suppression issue on appeal. And so certainly in this case, there was a knowing and intelligent waiver, we didn't stipulate to all the elements, we did that with some care, you know, to not to not run afoul of Larson in cases like that. So this isn't a waiver under those under Are you saying that the stipulation was conditional? Well, it was only introduced after and because we lost the suppression motion, but it also was narrow. I mean, I don't know about conditional, but it was certainly narrow, so as not to stipulate to all of the offenses. And I think importantly, the defendant even testify about the stipulation and said that, yeah, he, you know, he agrees now that this is what it shows on the video, but he didn't agree that he knew knowingly possessed it or any of the other, any of the other elements that are required. Um, let me ask you about Walther, you asked me, the government had previously encouraged the in that case, the government had previously encouraged the prior actor to conduct searches. What evidence in this record indicates that the government encouraged Yahoo search, there's both statutory encouragement. And then there's the actual, uh, encouragement on the facts of this case in terms of the statute, um, this court. Well, but, okay. But I think the district court found that there wasn't encouragement, right? Well, again, I think that to say whether or not there's encouragement, isn't really a factual finding. If, if we're putting it into a legal box of whether this constitutes government action or not, I think that's more of a conclusion than it is a person from Yahoo testified to, didn't they say, we're just enforcing our sub the conditions of what our subscribers do. We don't, I mean, they don't want, they don't want kiddie porn rings on there. They don't want to be a part of that. Well, no, of course not. But so why can't, why can't Yahoo do that? And that isn't the government encouraging them to do it because it's, um, what he also admitted what, what this agent's addict also admitted is that he was using the federal government and criminal law enforcement as a, as the immediate means to that later objective of cleaning up their platform. And what I mean by that is if Yahoo is going to use a federal government sized room to clean up its platform, well, the fourth amendment applies to the room. And that's why we're citing Ferguson, which is a Supreme court case that holds that even if, uh, even if the ultimate motive is to help in that case, um, pregnant women and the children that they, that they're carrying, not be exposed to drugs, using investigative tools and reporting mandatorily. That's a different case that it's analyzing a different issue. The special needs exception to search warrants. I'm just not sure that applies here. Well, I don't see why it wouldn't because ultimately the result is the same thing that the government is allowed to achieve what it could not achieve itself. It's allowed to benefit from searches that it would not be permitted to do on its own. To follow up on the argument that you're just making, wouldn't the outcome for Yahoo and Facebook necessarily be different then? Because I mean, Yahoo, frankly, I don't quite understand Yahoo's internal policy and why they needed additional help from law enforcement to take action regarding their terms of use, but Facebook didn't need that, right? Facebook just acted based on how its terms of use were written. So is the outcome, is your argument different for Facebook? Uh, well, I think, yeah, I think both of them are searches and both of them are searches that the government had at least collective knowledge of, if not specific knowledge of. So I apologize. I'm afraid I'm not answering the course questions. I don't understand the distinction of course. Well, I mean, that's fine. I'm going to move to a different question. So I mean, knowledge and acquiescence is not in a vacuum, right? The way I read the case law, that prong is all about trying to figure out what level of participation the government is taking and what's happening. So just because you know about something doesn't mean that you're participating in it. And looking at all the cases, it seems like there was some level of the government doing something to aid or further the activity, coming up with a plan, participating in the plan, providing the lookout service for the plan, right? And here, what is the government doing other than just knowing this is happening? Well, the first thing they did is they hosted this meeting in Alexandria, Virginia, and allowed Mr. Zadig to unfurl his investigation and lay it out on the conference table. And they collected that data from Mr. Zadig. But crucially, after that, they immediately did preservation requests where they seized, our argument is that they seized statutorily Mr. Rosenau's Yahoo accounts. They did that three It's important, I think that seizures or preservation requests are permitted for a 90 day period under 2703. This was done in one 90 day period. This was done three times well outside of any statutory authority. And so the government is literally preserving and seizing account data extra statutorily outside of the bounds of any statute. And then, then Yahoo tells the FBI, we are doing some more proactive scanning, lots of travelers again. And it's only after that notice and the government's seizure in preservation of those very same accounts that Mr. Rosenau's data was found that led them to the next tip that led them to the Facebook search. All of it is fruit. I see my time is dwindling. The timeline that I put in our briefs lays this out exactly. And it I would argue that that timeline shows both intertwined investigation, knowledge and acquiescence. And then I wish I could have addressed the statutory authority, but I will leave it at that and let Mr. Rainey take over this. Thank you. You have used up your time, but we did ask a lot of questions. So you may have a minute for a bottle when the time comes. Thank you so much. We'll hear from the government. Thank you, Your Honors. May it please the court. Mark Rahy for the United States. Can everybody hear me OK? Yes. Thank you. Thank you. The first thing I want to address, I believe it was a question from Judge Callahan. There are a lot of antecedent factual findings in this case. And the government's position is that those are definitely reviewed for clear error. Every motion is suppressed to my knowledge is ultimately reviewed de novo. But even like take, for example, United States versus Reid, upon which my opponent places great reliance, it says right up there in the standard of view where there are factual findings, it's clear error. And as an example, a knowledge I mean, you see it all the time in our district's drug cases was guilty, knowledge proven. That is a quintessential factual question. Now, returning to kind of the overarching picture here of state action, as I tried to lay out in the government's brief, there are a number of ways that courts look at this issue. The first and foremost is, did the government actually participate in the searches at issue? And I think the answer here is clearly no. That's what the district court expressly found is a factual matter. You have zero evidence that when these accounts were searched, that there were any government agents in the room. It's not like Yahoo or Facebook said we're going to open up our I.T. room and here come some agents and they're going to instigation. And participation and instigation are two key factors that Walter, back in 1981, identified in many cases have done after that. And we would the government would submit that that is not a clearly erroneous finding. Both you know, there were three sets of FBI agents who testified, Yasinski, Dingell and Cashman to a person. They all said they had no communication with Yahoo or Facebook prior to the search. And they certainly didn't tell them, please go search, you know, Mr. Rosenau's accounts or the Carlos center account. And you have the people on the other side, the private sector people, Sean Zated from the team. He specifically said, oh, no, we do this at our complete discretion. We do not take direction from law enforcement. And the analysts for Facebook, I believe her name was Jamie George. She averred the same thing in affidavit. So you have definitely no clearly erroneous, factual finding. There was no government participation or instigation. Now, the next test we move on to then is, well, were these private actors still instruments or agents? And that is what I've referred to as the two prong Miller test. And of course, you know, the first prong is knowledge and acquiescence. And the second one is whether there was an The government's position here. Well, let me take a step back. I think the defense position is simply that it's no secret that private, the ISPs do this. The statute expressly gives them the authority. You know, it's in 22. I don't know where I have it. I don't have it in my hands, but it's a carve out exception. They're the provider of the service. There's no secret that they do this. Somehow, I think that the defense would impute to us that because the searches happened, that we somehow know about every search that will ever happen. And that's a very broad proposition. If that's true, an internet search that'll happen 10 years, 15 years from now is suddenly going to be imputed to the government. You know, we respectfully disagree. And I know there was discussion about Walther. Walther is an unusual case. It does say that in some limited circumstances, you can impute government knowledge to a pattern and practice of conduct. But at the very last paragraph of that opinion, the panel says we emphasize the narrowness of our holding. And they said that it specifically depended on the unique facts there. There, the private actor, he worked for an airline company. He'd been a DEA informant for years. On 11 separate occasions, he had received money for information relating to, you know, possible drug behavior. And the district court in that case found as a factual matter that he acted with an expectation of a reward. In the Ninth Circuit held in the last sentence, we hold that the government cannot knowingly acquiesce in and encourage directly or indirectly the private citizen to engage in activity which it is prohibited from pursuing where that citizen, and this is the important part, has no motivation other than the expectation of reward for his or her efforts. Here, there is no reward that's ever been paid to either of these private parties that are, you know, Yahoo or Facebook. And so I want to clarify for a second. I mean, I understand the argument that you're making. One thing I'm struggling with, though, is footnote four in Reed seems to suggest that the government simply sitting back and receiving information from a private party over a long period of time, knowing that the private party is getting that information in a way the government couldn't get it, is enough. And I'm curious what your response is. What do we do with footnote four in Reed? And I've got footnote four in front of me. I mean, and I think I tried to address this in my brief. This is what I, in footnote four, says Walter found that the police had accepted the legal searches, end quote. In this case, you know, and as we point out, these searches, they're authorized by statute, not only the search by the ISPs as the provider of this private property, but also the disclosure to the, you know, the NCMEC. And, you know, I think that's already one grounded distinction, because in Walter, there was no question that those searches were illegal. You know, it was, he opened up somebody's bag. He wasn't a law enforcement officer. He claimed he did it solely for drugs. I mean, I think the theme that comes, you know, not just from footnote four of Reed, but the other cases as well, is that if the government doesn't have reason to believe that the searches are illegal, that doesn't change the equation. I think I quoted a footnote in our brief, a Smith decision from the 10th Circuit. It says the government, you know, doesn't have to discourage private parties from doing things that are not unlawful. And again, every FBI agent in this case testified to a person, that's Cashman, Dingell, and Yasinski, that they had no reason to believe that what these ISPs were doing was wrong. And in fact, Agent Yasinski went so far as to even testify, if he thought differently, then he would have had something to say. So, you know, and I think even taking a few steps back again from the Supreme Court's case in Skinner, if it's just passive acceptance that, you know, even if Reed, whatever they're referring to in that footnote, I think most of the cases still say if there's no underlying illegal activity, and it's passive acceptance, that's not government action. You know, in here, I mean, even in United States Miller, it says the government must be involved either directly as a participant or indirectly as an encourager. And I think Judge Callahan maybe asked a question in 1.2, you know, where is the evidence of encouragement? Even in the statute itself, and this is 2258, capital A, sub F, Congress went out of its way to say that nothing in this statutory scheme imposes any affirmative duty on an ISP to monitor any user, to monitor the report. So, you know, I know our brief, we distinguish the many ways that we believe this case is can be separated from Skinner. But I think that is kind of remarkable. I mean, that is Congress literally going out of its way to say, look, you know, basically businesses, this is on you. We're not asking you to, you don't have to. But if you do, you get the mandatory reporting requirements. So let me ask you this, Mr. Howe, if even if Yahoo's ultimate objective was in furtherance of its business interest, how do you respond to Rossanau's argument that if its immediate objective was to assist the government, then its business interest was not truly independent of its immediate objective? I mean, I guess a couple things, you know, first off, as I pointed out in the brief, and I think as you also noted, you know, that's a special needs case. The issue here is narrow. It's whether there was state action to begin with. Ferguson is versus the city of Charleston. There's no question that the actors, the defendants in that case are state actors. The only question under special needs is, well, starting from that premise, now do you still need a warrant? Can you, you know, what's the quantum of suspicion? So, I mean, I would say on the on its face, it's distinguished that way. The other big case I would rely on, of course, is United States versus Cleveland out of this circuit, which I believe decided in 1994, Judge Thompson, the late Judge Thompson there said, even a dual motive will not negate an independent, you know, legitimate motivation. And the term that he used was, that independent motive overridden. And the government would submit, and you have even an amicus brief supported by Yahoo. It says, it makes it crystal clear, this is a compelling interest for these private actors. These are huge companies. They are involved, you know, they want to make that their brand isn't being ruined, you know, and it's not just, oh, it's not just about the. I don't want to interrupt your question. We've lost the timer, but I think you're getting close to the end. And I didn't want to let you get to the end without asking you about Good Faith and the District Court. And I'd like your response to his arguments concerning why there was not a Good Faith exception here. Right. Okay. I'll try to make these quick, Your Honor. I know one of his chief arguments seems to be, he calls it a straw man affiant. And that of course is Agent Dingell. Agent Cashman, once this case got referred to San Diego, definitely did the work. But unfortunately, on the day this warrant was to be presented to the magistrate, she was presenting at a conference. But what the record shows is, before leaving for that conference, she specifically talked to Agent Dingell, who was the affiant, brought him up to speed on the investigation. And that's an excerpts of record 1850 to 51 in 1888 to 89. So, you know, as a case where they just pulled the nearest person out of the hallway at the FBI and said, sign this. This is somebody that, you know, it was specifically brought up to bearing on the case. And otherwise, another point, I know my opponent said, well, there were a couple of factual inaccuracies in there where they said certain evidence had come from prior warrants. Yeah, that wasn't accurate. But what the government would say is still the overwhelming information in there was. And the reality is that if it didn't come from the warrant, it came from the cyber tip. So it's not as if that, you know, this is the same concept that we're talking about here. This is something that came from a statutorily authorized search. So the government would argue that, you know, any problem with that is certainly not enough to change the view that the overall, the overwhelming majority is prima facie valid. It's what a on. And I think finally, I know I made the argument in our brief about Illinois versus Kroll. And boy, I hadn't had to cite that or even think about that case since law school. But this case struck me. I mean, here you have duly enacted statutes by Congress that not only authorized the searches by the ISPs, but also the disclosure. And yeah, we didn't argue Kroll specifically, but I think somebody mentioned earlier, it's claims that are waived, not arguments. And without a doubt, we did argue good faith below. It's an excerpts of records, 1676 to 77 and 2330 to 31. And even in the course of that argument, although we didn't cite Kroll, we said that the agents here acted in accordance with the statutes. And the final point I would make your honor, unless there are other questions, this court on the substantive fourth amendment issue is not riding on a blank slate. We cited, there are four other circuits that have found that this same statutory scheme does not automatically render an ISP a state actor. It's the fourth circuit in Richardson, the first circuit in Cameron, the eighth circuit in Stevenson. And of course the sixth circuit just last December in Miller. I don't think my opponent is ever acknowledged those cases. At most in the reply brief, he cites Miller for just the reason or the analysis that the sixth circuit uses, but never acknowledges the result in that case, which was a finding of no state action. So unless there are any further questions, the government would submit. Thank you, counsel. I don't believe there are. And Mr. Scott, you may rebut, and I'll do my best to keep track of the minute because we've lost our court deputy. So thank you very much, your honor. The court asked me during the initial argument, what evidence there was of the government's encourage encouragement, endorsement, or participation in this search. I don't know how well I answered the question, but I think the United States Supreme court has answered that question very well. In Skinner, the United States Supreme court held that when the government removed barriers to testing, but its desire to share the fruits of such intrusions and mandated that the railroads not bargain away the authority to perform tests, that these were clear and vicious indices of the government's encouragement, endorsement, and participation. Now, what the government has never addressed in this case is the communications decency act and section two 30 section two 30. And this is textual. This is statutory. The statute itself, section B five says that it is designed to ensure vigorous enforcement of federal criminal laws and deter and punishing trafficking in obscenity and so forth. What the CDA does two 30 is exactly what Skinner described. It expresses a clear preference. And the preference here is to vigorously enforce criminal law. And then it sweeps away all the barriers. Counsel in most states, there is a requirement that medical personnel and school teachers report abuse of children. They in fact may be required by law to do that. So when they report, does that make them a state actor or are they, you know, just reporting? Well, it when there's a statutory scheme like this to expressly encourage searching, and then I'm asking you something different. I'm asking you in those situations where presumably teachers and medical personnel are supposed to keep an eye out for these things to when they walk into the police station, and they say, I saw bruises on little George last week, you know, and it says someone has been, you know, physically abusing him. Is that teacher or medical person, a state actor? If they're doing invasive searches? Yes. And if it's because if they're doing invasive searches, like there was in man versus city of San Diego, they're searching under clothes. If they're, you know, detaining the person to do that, that's actually the main case is, is, you know, searches of a person's privates or under their garments, then yes, absolutely. That's a state search. If it's, they have swept away all barriers to that search and preempted any laws to the contrary. And then that's, but they're a doctor doing an examination. And then you're saying they become a state actor when they're a mandatory report. That can't be right. But that's exactly what man says that that's the man versus county of San Diego case. So that was a medical examination in the context of the police center. So that, that is the case. But the person, but how were the police involved in man? It's not the same as if just what judge Graber's hypothetical, if in the course of your seeing people as a doctor, you see things and you examine, and then you think someone's being abused. That's not, that's not man. No, but, but what that adds to it is why we're there and how they're there in the first instance, the police bring you in. That's a different situation than when the mandatory reporter is what they see on their own. And then they have to tell someone they can't just keep it secret. I think that's true. But again, the distinguishing factor that I was sharing with judge Graber is that there is not the clear preference and the federal preemption to the, to the, the doctor based mandatory reporting requirements here in the CDA, both removes any barriers and it preempts and it encourages. And then once that searching is going on, there's a mandatory part of it on top of all of that. And that's the part that's missing any of the other circuits and any other cases that the government has discussed just now, never cited the CDA. And I think have largely not cited the electronic communications protection act. So you have much exceeded the extra time that we gave you even I'm keeping watch on a different, different time. Give an inch and I'll take a mile. I apologize. No, it's been a very interesting argument. We appreciate everything that both of you have contributed and the case just started to submit it. And I hope we have a deputy to close court. Yes. This court for this session stands adjourned. Thank you.
judges: Graber, Callahan, Forrest